1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELANTE SHINE | Case No.:  20cv2036-LAB-DEB |
| Plaintiff, | **ORDER:** |
| v. | |
| OFFICER DILLON FUSTON, et al., | **1) GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND STRIKE [Dkt. 11]; and** |
| Defendants. | **2) GRANTING IN PART AND DENYING IN PART CITY OF SAN DIEGO'S MOTION TO DISMISS AND STRIKE [Dkt. 10]** |

In the early hours of December 14, 2019, Plaintiff Elante Shine left a nightclub and was set upon by other nightclub patrons. Shine was beaten, stabbed, and thrown into a storefront window, which broke on impact. Police arrived, detained Shine, questioned him, and ultimately released him after he refused medical treatment. About an hour later, Defendant Officers Dillon Fuston, Andrew Korenkov, and Paul Johnston (collectively, the "Defendant Officers"), the last of whom had been present on the scene of the earlier incident, encountered

Shine near an ATM a few blocks away. They stopped him in connection with the broken storefront window, restrained him, and placed him in a chokehold and seated asphyxia position until he lost consciousness. Shine filed this action against the three officers, Sergeant David McAnnally (collectively with the Defendant Officers, the "Individual Defendants"), and the City of San Diego (the "City"), asserting claims under 42 U.S.C. § 1983 for violation of his constitutional rights and several state law claims. The Individual Defendants filed a Motion to Dismiss and Strike portions of Shine's First Amended Complaint (the "FAC"), (Dkt. 11), and the City filed a similar motion. (Dkt. 10).

Both motions are **GRANTED IN PART AND DENIED IN PART**. Neither identifies any "redundant, immaterial, impertinent, or scandalous matter" that the Court can strike under Fed. R. Civ. P. 12(f). But both identify deficiencies in some, but not all, of the FAC's claims. As discussed below, the flawed claims are **DISMISSED**.

## BACKGROUND

The Court summarizes the FAC's allegations and the reasonable inferences therefrom as follows.[1] Shine, an African-American, was a customer at the Phantom Lounge and Nightclub in the early hours of December 14, 2019. (FAC, Dkt. 6, at ¶¶ 1, 13). After having an altercation inside the club, Shine left. (*Id.* ¶¶ 13–14). Once outside, he was "jumped, beaten, and stabbed" by other nightclub patrons. (*Id.* ¶ 14). During the assault, Shine was thrown into the glass window of the T-Mobile Store next door. (*Id.*). The window broke. (*Id.*). The City dispatched Johnston and other officers to the scene, and the officers detained and questioned Shine. (*Id.* ¶ 15). Shine refused medical treatment and was released. (*Id.*). An hour later, Johnston and the other two Defendant Officers,

---

[1] As discussed below, the Court declines to accept as true for the purposes of this motion to dismiss the statements contained in the Individual Defendants' written reports and matters reflected by bodycam footage.

Fuston and Korenkov, encountered Shine, who was still weak, disoriented, and bloody from the earlier attack. (*Id.* ¶¶ 16–17). Shine was unarmed and didn't attempt to flee. (*Id.* ¶ 23). The officers approached him and, without explaining the stop, grabbed his arms and held them behind his back. (*Id.* ¶ 18). Shine asked why he was being detained but received no response. (*Id.* ¶ 19). Fuston then placed Shine in a chokehold and Johnston forced Shine into a sitting position that restricted his breathing. (*Id.* ¶ 19). Although Shine was not resisting, Fuston and Johnston continued to apply these holds until Shine lost consciousness. (*Id.*).

The Defendant Officers and their supervisor, McAnnally, later claimed that Shine was suspected of vandalism, namely the breaking of the T-Mobile Store window. (*Id.* ¶ 25). The Defendant Officers' reports allegedly falsely state that Shine had "assum[ed] a fighting stance," "looked like he was preparing to take a swing at [the officers]," and headbutted Johnston prior to being detained. (*Id.* ¶ 26). Fuston allegedly falsely reported that he placed Shine in a carotid restraint, rather than a chokehold, and that Shine had attempted to "gouge out" Fuston's eyes. (*Id.*). The reports omitted any mention of the use of a seated asphyxia position. (*Id.* ¶ 29). McAnnally reviewed the officers' written reports and the bodycam footage of the incident. (*Id.* ¶ 30). From his review, McAnnally inferentially knew the reports to be false, but approved them nevertheless. (*See id.*). Shine was initially charged with resisting an executive officer and battery on a peace officer, although those charges were dismissed on October 1, 2020. (*Id.* ¶¶ 22, 33).

The City, through the San Diego Police Department, employs each of the Individual Defendants. (*Id.* ¶¶ 2–6). The City's policies permit officers to "compel a person to halt, to remain in a certain place, or to perform some act," but require them to disclose the reason for the stop "at some point during the detention." (*Id.* ¶ 34). At the time of the incident, the City permitted officers to use carotid restraints in some situations, but "expressly prohibited" them from employing

chokeholds "unless the subject is displaying life threatening behavior." (*Id.* ¶¶ 35–36). The City requires officers to prepare "detailed, accurate reports" that describe the type of force used in an incident, but its policies don't specify that the use of chokeholds must be stated. (*Id.* ¶ 37). Officers must report other officers' misconduct immediately. (*Id.* ¶ 38). At all relevant times, the City "had official policies or customs to prevent . . . 'bias-based policing,'" which policies aim to prevent officers from "inappropriately consider[ing] factors such as race . . . or similar personal characteristics in deciding with whom and how to intervene in an enforcement capacity." (*Id.* ¶ 39). Nevertheless, the City's police officers "are reported to have used force at a higher rate than most police departments in California" and "to have used more severe forms of force against black people" between 2016 and 2018. (*Id.* ¶ 42).

## APPLICABLE STANDARD

A Rule 12(b)(6) motion to dismiss calls for a preliminary evaluation of a party's pleading and tests only whether the pleading provides "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal marks and citation omitted). Because the focus is on the pleading's sufficiency, the Court's analysis on a motion to dismiss is generally restricted to matters contained in that pleading. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Nevertheless, the Court may "consider . . . documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *Id.*

The required short and plain statement "does not need detailed factual allegations," only "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Tombly*, 550 U.S. at 556). In addition to assuming that all the facts alleged in the Complaint are true, the Court must make all reasonable inferences that can be made in the plaintiff's favor. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013).

## DISCUSSION

## I.   The Body-Worn Camera Footage and Written Reports Aren't Entitled to the Presumption of Truth

The Individual Defendants ask the Court to treat body-worn camera footage as incorporated in the FAC by reference and to assume their contents to be true. Because doing so would serve only to raise disputes about the FAC's allegations and contradict the requirement that allegations in a complaint must be taken as true for the purposes of a motion to dismiss, the Court denies this request.

A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Unlike judicial notice, a court may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6). While this is generally true, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (cleaned up).

The FAC refers extensively to reports prepared by the Defendant Officers, so the Court can treat the reports as incorporated by reference. But the FAC alleges that the reports' factual assertions are false. (Dkt. 6 ¶¶ 25–28). Assuming those same assertions to be true would "only serve to dispute facts stated in a well-pleaded complaint," so the Court can't make that assumption here any more

20cv2036-LAB-DEB

readily than it could dispose of a fraud claim by assuming the accuracy of the contested statements. *Khoja*, 899 F.3d at 1003.

The request to treat the bodycam footage as incorporated by reference suffers from a similar problem. The FAC alleges only that the footage: 1) didn't depict any use or attempted use of force by Shine against the Defendant Officers, (Dkt. 6 ¶ 33); 2) didn't support the statements in the Defendant Officers' reports, (*id.*); 3) was reviewed by the San Diego County District Attorney's Office, which subsequently dismissed criminal charges against Shine, (*id.*); and 4) made McAnnally aware that the written arrest report was false. (*See id.* ¶¶ 30–31). These references aren't "extensive[]." *Ritchie*, 342 F.3d at 908. To the extent they may be considered so, the footage itself would serve only to dispute the FAC's factual allegations. *Khoja*, 899 F.3d at 1003. The Court declines to treat the bodycam footage as incorporated in the FAC by reference.

## II.   The FAC Sufficiently States a § 1983 Claim Against Fuston and Johnston

Shine seeks to impose liability on the Defendant Officers under 42 U.S.C. § 1983 for alleged violation of his Fourth Amendment rights based on three theories: malicious prosecution; unlawful seizure; and unreasonable force. But the FAC doesn't raise malicious prosecution as part of the § 1983 claim, so this claim fails. Likewise, the pleading doesn't allege any use of force specific to Korenkov, so the unreasonable force claim fails as to him, too. The FAC sufficiently states a claim under § 1983 for unlawful seizure against the Defendant Officers and for unreasonable force against Fuston and Johnston, though, and qualified immunity isn't available on those theories on the facts alleged.

To recover under § 1983, a plaintiff must allege and later prove: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity

protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). But even a plaintiff offering such proof may not always recover: "[G]overnment officials performing discretionary functions [have] a qualified immunity, [which] shield[s] them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

An official's actions "could reasonably have been thought consistent with the [allegedly violated rights]" where there is it isn't "clearly established" in case law that those actions amount to a violation. *Id.* at 639–40. Plaintiffs "bear[] the burden of showing that the right at issue was clearly established." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019). And legal rules stated at a high level of generality can't "clearly establish" that a particular action infringes on a plaintiff's rights. *Anderson*, 483 U.S. at 639–40. The plaintiff must therefore identify "clearly established law . . . particularized to the facts of the case" that would lead a reasonable officer to understand the complained-of action violated the plaintiff's rights. *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017).

To reiterate, Shine argues that the FAC sufficiently alleges a § 1983 claim under three theories: unlawful seizure; unreasonable force; and malicious prosecution. Each theory is discussed below.

### A. Malicious Prosecution

Shine maintains that the Defendant Officers violated his Fourth Amendment rights by maliciously prosecuting him. But he doesn't allege it: the FAC doesn't include this theory as part of Shine's § 1983 claim against those officers. (*See* Dkt. 6 ¶¶ 43–56.) Because the FAC doesn't put Defendants on notice of this theory, the § 1983 claim can't rely on it. *See Twombly*, 550 U.S. at 555 (pleading must give "fair notice of . . . the grounds upon which [the claim] rests").

### B. Unlawful Seizure

Shine also contends that the Defendant Officers violated his Fourth Amendment rights by unlawfully seizing him. This allegation is sufficient to support his contention that the officers violated the Fourth Amendment. Either an investigative stop or an arrest can constitute a seizure. Shine's FAC and briefing appear to rely exclusively on the theory that he was arrested. And while an officer may make an investigative stop based on only reasonable suspicion, an arrest requires probable cause. *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995).

In determining whether Shine has plausibly alleged that he was arrested, the Court considers the "totality of the circumstances," including "the intrusiveness of the stop, *i.e.*, the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e. whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). As alleged, the Defendant Officers used aggressive tactics, including "bent arm and wrist locks," "thrust[ing] . . . Shine's body onto the ground," pushing his "upper body and head . . . towards the ground," and placing him in a chokehold until he lost consciousness. (Dkt. 6 ¶ 19). The allegations reveal little apparent justification for the intrusiveness of those tactics. Shine was allegedly suspected of vandalism, a non-violent crime. (*Id.* ¶ 25). He was unarmed and allegedly "displayed . . . weakness, disorientation, and confusion" from being recently beaten and stabbed. (*Id.* ¶¶ 17, 23). He didn't "actively resist or attempt to escape," only "asking the reason he was being detained." (*Id.* ¶¶ 19, 23). These allegations support a plausible inference that Shine was arrested, rather than subjected to an investigatory stop.

Whether the FAC alleges that the arrest was unlawful turns on the question of whether its factual allegations support the conclusion that the officers had

probable cause to arrest him. They don't support that conclusion. The officers allegedly suspected Shine of vandalism in connection with the broken store window. (*Id.* ¶ 25). But Johnston was present when officers released Shine from the scene of the broken window incident. (*Id.* ¶¶ 14, 15, 17). And prior to detaining Shine, Johnston recognized him from the earlier incident. (*Id.* ¶ 17). It's reasonable to infer that the officers who released Shine had concluded that he wasn't responsible for the broken window and that Johnston was aware of that conclusion. Accepting these allegations and reasonable inferences as true, the FAC plausibly alleges that the officers lacked probable cause to arrest Shine.

The Defendant Officers can't avail themselves of qualified immunity at this stage because a reasonable officer would have known that arresting Shine under these circumstances violated the Fourth Amendment. "[I]t is clearly established as a matter of federal law that officers may not conduct a warrantless arrest without probable cause." *Johns v. City of Eugene*, 771 Fed. Appx. 739, 740 (9th Cir. 2019). And where an officer has information that "tend[s] to dissipate, rather than support, probable cause to believe" an individual committed the crime under investigation, an arrest violates the Fourth Amendment." *United States v. Lopez*, 482 F.3d 1067, 1075 (9th Cir. 2006). Because Johnston was inferentially aware that that Shine had already been questioned and released in connection with the broken window, a reasonable officer in this situation would have known that he lacked probable cause to arrest Shine. The Defendant Officers can't rely on qualified immunity to dismiss the § 1983 unlawful seizure claim.

## C. Unreasonable Force

An unreasonable force claim requires factual allegations supporting the inference that the force used was objectively unreasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness analysis "requires balancing the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at

stake to determine whether the use of force was objectively reasonable under the circumstances. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (cleaned up). The weight of the government's interest depends on factors including "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others ... (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances that existed at the time of the arrest." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) (cleaned up). And even an officer who doesn't apply unreasonable force himself may be liable for his "integral participation" in the violation, including actions that are "instrumental in the officers' gaining control of [a plaintiff], which culminated in [the application of unreasonable force]." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).

Under the circumstances alleged here, the officers didn't have a strong interest in the use of force. Shine alleges that he was suspected of a minor crime, vandalism, that he was unarmed (with no basis apparent from his allegations to suspect him of otherwise posing an immediate safety threat), and that he wasn't resisting. (Dkt. 6 ¶¶ 23, 25, 16–19). The nature of the force used—grabbing his arms, pulling them behind his back in bent arm and wrist locks, thrusting his body to the ground in a seated position, and applying a chokehold and "seated asphyxia" position until Shine lost consciousness—is unreasonable under those alleged circumstances. (*Id.* ¶¶ 18–19). So Shine has sufficiently alleged a constitutional violation as to Fuston, who allegedly placed him in a chokehold, and Johnston, who allegedly applied the "takedown techniques" that drove Shine to the ground. (*Id.* ¶ 19). But he doesn't allege that Korenkov, specifically, took any actions constituting either unreasonable force or integral participation in the violation, so he hasn't alleged an unreasonable force claim against that Defendant. *See, e.g., Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1019 (S.D. Cal. 2018) ("group pleading does not provide [d]efendants fair notice of the

claims against them").[2]

Shine carries his burden of showing that the force allegedly used was a clearly established violation of his constitutional rights. In *Hunter v. City of Federal Way*, 806 Fed. Appx. 518, 520 (9th Cir. 2020), the Ninth Circuit ruled that "at least as of January 25, 2014, there is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment," and on that basis denied a defendant officer's qualified immunity defense. Because Shine alleges that he wasn't resisting and that he was nevertheless placed in a chokehold, his allegations are sufficient to support the conclusion that Fuston knew or should have known that placing him in a chokehold was a violation of Shine's Fourth Amendment rights. (Dkt. 6 ¶ 19).

A reasonable officer would have known, too, that Johnston's alleged takedown was unreasonable under the circumstances alleged. The Ninth Circuit clearly established in 2013 that, where a plaintiff "[does] not make any threats or resist the officer, . . . the use of non-trivial force *of any kind* [is] unreasonable." *Rice v. Morehouse*, 989 F.3d 1112, 1125–26 (9th Cir. 2021) (cleaned up, emphasis in original) (citing *Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013). On its face, this rule applies regardless of the seriousness of the suspected crime. *Id.* Whether a takedown maneuver is "non-trivial force" "can often depend on specific factual circumstances." *Id.* Here, forcing Shine to the ground and holding him in a position that restricted his breathing, while he was already injured and bleeding for the earlier incident, qualify as non-trivial. *See Rice*, 989 F.3d at 1121 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007); *Blankenhorn*, 485 F.3d at 463 (use of restraints that "made it difficult

---

[2] The closest the FAC comes to describing Korenkov's participation is the allegation that "Fuston, Johnston, and Korenkov . . . aggressively grabb[ed] his arms and then pull[ed] them behind his back in bent arm and wrist locks." (Dkt. 6 ¶ 18). But it's not plausible that all three of them did this, so this allegation alone can't satisfy Shine's pleading burden as to any of them.

for [plaintiff] to move and breathe" excessive against non-resisting plaintiff). Under the circumstances alleged in the FAC, then, Johnston isn't entitled to qualified immunity for taking down Shine. (Dkt. 6 ¶ 19).

Defendants attempt to distinguish *Rice* on the grounds that Shine "was actively resisting officers," a fact not incorporated in and contrary to the pleading. (Dkt. 21 at 2). They also argue that the crime at issue, felony vandalism, was more serious than the turn signal indicator and driving under the influence violations suspected in *Rice*. (*Id.*). The Court doubts the premise that vandalism is more serious than driving under the influence, but the difference in the offenses doesn't affect application of the rule stated in *Rice* and *Gravelet-Blondin*, which applies to non-threatening, non-resisting suspects regardless of the seriousness of the suspected crime.

In sum, then, Shine's unreasonable force theory is sufficiently alleged against Defendant Officers Johnson and Fuston; however, Shine hasn't alleged that Officer Korenkov played any role in the use of unreasonable force. Because clearly established law would put a reasonable officer on notice that the force Johnston and Fuston allegedly used was unreasonable under the circumstances, qualified immunity is unavailable to them at this stage. Accordingly, the Individual Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as to the FAC's § 1983 claim against the Defendant Officers. The portion of Shine's claim based on an unlawful seizure theory is adequately pled as to all Defendant Officers, and the FAC sufficiently alleges that Fuston and Johnston used unreasonable force. The Motion to Dismiss as to those claims is **DENIED**. However, Shine's malicious prosecution theory is not adequately pled, nor has he offered any facts or allegations to support his unreasonable force claim against Officer Korenkov. The Motion to Dismiss as to those claims is **GRANTED**, and those claims are **DISMISSED**.

### III.    Shine Hasn't Adequately Alleged a § 1983 Claim Against the City

Shine next seeks to hold the City liable under § 1983 and *Monell v. Dept. of Social Svcs. of the City of New York*, 436 U.S. 658, 694 (1978).  Under *Monell*, a municipality cannot be held liable under § 1983 "*solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original). Instead, the municipality can be held liable only upon allegation and proof: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (cleaned up) (citing *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989).  Shine doesn't plausibly allege these elements under any theory.

He first tries to tie the City to a violation of his rights by alleging that the detention policy it applies to its police officers "allow[s] officers to 'use their authority to compel a person to halt, to remain in a certain place, or to perform some act'" without "immediately provid[ing] . . . an explanation for the purpose of the stop." (Dkt. 6 ¶ 34). But this policy is only tangentially related to the officers' alleged decision to arrest Shine. Without further factual allegations, it isn't plausibly the "moving force" behind the allegedly unlawful arrest.[3]

Shine also seeks to hold the City liable for its use of force policy. As discussed above, the officers are plausibly alleged to have violated Shine's Fourth Amendment rights through use of excessive force. But the policies Shine

---

[3] Shine argues that the City's policy conflicts with Cal. Penal Code § 841, which requires a person making an arrest to, "on request of the person he is arresting, inform the latter of the offense for which he is being arrested." But whether that state law and the City's policy are in conflict doesn't matter to a § 1983 claim, which pertains only to rights under *federal* law. *Edwards v. County of San Diego*, 124 Fed. Appx. 547, 549 (9th Cir. 2005) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)).

20cv2036-LAB-DEB

points to "required officers to prepare 'detailed, accurate reports' describing the type of force used on subjects" and to "immediately report the misconduct of another officer." (Dkt. 6 ¶¶ 37, 38). While these policies don't specifically highlight the need to report chokeholds or positional asphyxiation, a failure to report those maneuvers would nevertheless violate the policies' requirements. Shine can't blame the policy for a failure to report—which isn't a basis for his § 1983 claim in any event, (*see supra*, Section II(B))—nor can the existence of a policy barring the conduct at issue amount to "deliberate indifference" to rights the policy protects. *See Oviatt*, 954 F.2d at 1474.

Shine's claim for racial bias, insofar as it relates to the City's policy, suffers from a similar problem: the policies at issue were allegedly violated in this case. (Dkt. 6 ¶¶ 39, 48). Shine also alleges that he "is informed and believes that between 2016 and 2018, [the City]'s officers are reported to have used . . . more severe forms of force against black people." (*Id.* ¶ 42). But this allegation is too vague to establish that the use of excessive force is customary in the City's police department and does nothing to allege that such a custom was a driving force behind the use of excessive force against Shine.

Finally, the § 1983 claim against the City fails insofar as it is based on a failure to train. A plaintiff seeking to recover under such a theory must allege that "the municipality had actual or constructive notice that a *particular omission* in their training program will cause municipal employees to violate citizens' constitutional rights. In turn, to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (cleaned up) (emphasis added).

"Because the FAC fails to allege factual matter sufficient to support an inference that Shine's injury was caused by the City's policies or that the policies

exhibited a deliberate indifference to Shine's rights, the § 1983 claim against the City is **DISMISSED WITHOUT PREJUDICE**.

## IV. The FAC Doesn't Allege Enough Facts to State a Plausible Claim under the Ralph Act

A plaintiff seeking recovery under California's Ralph Act must allege facts supporting the inference that the plaintiff's race was a motivating reason for the alleged misconduct. *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007) (stating elements for Ralph Act claim related to discrimination based on age or disability). Shine fails to make such allegations. The FAC's only factual allegations relating to race are that: 1) Shine is African-American (Dkt. 6 ¶ 1); and 2) upon information and belief, between 2016 and 2018, "[the City's] officers . . . Are reported to have used more severe forms of force against black people." (*Id.* ¶ 42). The Court can't infer from these threadbare allegations that the force against Shine in this instance was motivated in part by his race, so this claim must be **DISMISSED WITHOUT PREJUDICE**. *See Iqbal*, 556 U.S. at 678 (plaintiff must allege "sufficient factual matter, accepted as true, to . . . allow the court to draw the reasonable inference" that defendants are liable for the alleged misconduct).

## V. The Parties Don't Address the Standard Applicable to Shine's Bane Act Claim

Shine next seeks to hold the City and the Defendant Officers liable under California's Bane Act, which creates a right of action against persons who "interfere[] by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1(b). The Individual Defendants argue that the Bane Act claim requires some "threat, intimidation, or coercion" *independent* of the underlying constitutional violation, relying on *Shoyoye v. County of Los* Angeles, 203 Cal. App. 4th 947, 960–61 (2012). But subsequent California appellate

rulings have disapproved of *Shoyoye* and the Ninth Circuit has declined to follow it on that basis. *See Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 799 (2017) (courts applying *Shoyoye* to require independence from inherent coercion as Bane Act element "misread the statute"); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (rejecting *Shoyoye* in favor of *Cornell*).

Instead, a Bane Act plaintiff must allege and prove *specific intent* to violate the plaintiff's protected rights. *Cornell*, 17 Cal. App. 5th at 799–800 (2017). This requires two elements: first, that "the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case;" and second, that the defendant "commit[ted] the act . . . with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Id.* at 803. The parties haven't briefed the application of this standard to Shine's Bane Act claim, though, so the Individual Defendants' Motion is **DENIED WITHOUT PREJUDICE** insofar as it seeks dismissal of this claim.

## VI.   The FAC Properly Alleges a Claim for Assault

Shine also seeks to hold the City and the Defendant Officers liable for assault. Those three Individual Defendants argue that they can't be liable for assault under California law because they "were seeking to detain plaintiff," and so couldn't have "inten[ded] to cause harmful con[tact]." (Dkt. 11-1 at 18). But that's not an accurate statement of California law: a claim for assault may lie against an arresting officer where that officer "appl[ies] an unreasonable amount of force," without reference to whether the officer was attempting to detain the plaintiff at the time. *Johnson v. County of Los Angeles*, 340 F.3d 787, 794 (9th Cir. 2003) (citing *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269 (1998). And Shine's allegations aren't conclusory—the assault claim incorporates not only the conclusions stated in ¶¶ 92–103 of the FAC, but also the FAC's factual allegations regarding Fuston and Johnston's application of a chokehold and a

20cv2036-LAB-DEB

takedown maneuver, respectively. (Dkt. 6 ¶¶ 18–19). And for the reasons stated above, Shine sufficiently alleges that Fuston and Johnston (but not Korenkov) applied an unreasonable amount of force, and that the City can be liable for assault, too. *See supra*, Section II(C).[4]

## VII.   Shine's Battery by a Peace Officer Claim Is Sufficiently Alleged

To state a claim for battery by a peace officer, Shine must allege that a defendant intentionally touched him; the defendant used unreasonable force; the plaintiff did not consent to the force; the plaintiff was harmed; and the defendant's use of unreasonable force was a substantial factor in causing the harm. *Edson*, 63 Cal. App. 4th at 1271–72 (1998). As with the assault claim, and based on the same allegations, this claim isn't based solely on conclusory allegations. Shine sufficiently alleges that Fuston intentionally placed him in a chokehold and Johnston intentionally used a takedown maneuver to force him into a "seated asphyxia position" under conditions where that level of force was unreasonable. (Dkt. 6 ¶¶ 17–19). He plausibly alleges that he didn't consent. (*See id.*). And he alleges that he was harmed, with the unreasonable force being a substantial factor in the harm. (*Id.* ¶¶ 20–22, 24). The FAC's battery claim isn't plausibly alleged as to Korenkov, but it is sufficiently alleged against Fuston, Johnston, and the City.

## VIII.   Defendants Fail to Identify a Basis to Dismiss the FAC's Claim for False Imprisonment

The Individual Defendants ask the Court to dismiss Shine's claim against the Defendant Officers for false imprisonment because, "as with the § 1983 claim, Plaintiff has not asserted sufficient facts to support a plausible claim as . . . probable cause defeat[s] this claim." (Dkt. 11-1 at 19). But as discussed above, probable cause can't defeat the § 1983 claim here because the FAC's factual

---

[4] The Court addresses the City's general arguments regarding vicarious liability and redundancy *infra*, Section XII.

allegations don't support those inferences.[5] For the same reason, they can't defeat this claim, either.

Nor does the FAC "simply recite[] the elements of the cause of action." (*Id.*). The paragraphs the Individual Defendants point to do that, but they also "incorporate[] by reference[] the allegations in [the FAC]." (Dkt. 6 ¶ 115). Those elements are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. County of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011). The incorporated factual allegations fulfill each of these elements. (*See* Dkt. 6 ¶¶ 18–19, 23); *infra* Section II(A).

## IX.    Shine's Claim for Malicious Prosecution Is Statutorily Barred

Shine can't assert a claim for malicious prosecution against the Individual Defendants. "Under California law, a police officer is granted statutory immunity from liability for malicious prosecution." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 (1997); *see also* Cal. Gov. Code § 821.6. The Individual Defendants are police officers, so they are immune from liability for malicious prosecution. That claim is **DISMISSED WITH PREJUDICE**.

## X.    The FAC Doesn't Allege Emotional Distress or Causation to Support Shine's Intentional Infliction of Emotional Distress Claim

Shine next seeks to hold all Defendants liable for intentional infliction of emotional distress. This claim requires him to allege: (1) extreme and outrageous conduct with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) Shine suffered extreme emotional distress; and (3) actual and proximate causation. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009). *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).

---

[5] Defendants argue, too, that reasonable suspicion defeats the claim insofar as Shine was merely stopped, rather than arrested. But Shine, in the FAC and in his briefing, relies only on the theory that he was arrested, rather than merely stopped.

Shine's allegations of unreasonable force serve as sufficient allegations to fulfill the first element. *Lopez v. Chula Vista Police Dept.*, 2009 WL 10725739 at *12. But he alleges only in conclusory terms that he suffered emotional distress and that his distress was caused by the Individual Defendants' actions. (*See* Dkt. 6 ¶¶ 149–51, 155). Such allegations aren't enough on a motion to dismiss, so this claim, too, must be dismissed. *See Moore v. Greyhound Bus Lines, Inc.*, Case No. 15-cv-1186-CAB (MDD), 2015 WL 13660330 at *4 n.3 (S.D. Cal. Nov. 9, 2015) (listing cases dismissing intentional infliction of emotional distress claims for failure to sufficiently allege emotional distress).

## XI. Defendants Don't Identify a Basis to Dismiss Shine's Negligence Claim

The FAC next alleges that the Individual Defendants were negligent in using unreasonable force, detaining him without probable cause or reasonable suspicion, and filing false reports regarding the incident. The Individual Defendants argue only that the claim must be dismissed "for the same reasons the § 1983 claim should be dismissed," that is, that the officers' alleged conduct was reasonable. (Dkt. 11-1 at 21). But as discussed above, the FAC sufficiently alleges that the officers' conduct was unreasonable, so the negligence claim can't be dismissed on this basis.[6]

## XII. The City's Additional Arguments Against the State Law Claims Fail

Six of Shine's state law claims name the City as a defendant. The City offers four reasons that these claims should be dismissed: 1) the FAC "has not asserted any facts by which the City can be found directly liable for the intentional torts asserted;" 2) the state law claims "are redundant of the [§ 1983] cause of

---

[6] To the extent Individual Defendants intend to argue that the negligence claim is barred by qualified immunity, they are mistaken. *See, e.g., Lerma-Mayoral v. City of El Centro*, Case No. 15-cv-818-LAB (PCL), 2018 WL 4537752 at *11 (S.D. Cal. Sept. 21, 2018) ("[N]egligence is not subject to the qualified immunity defense.").

20cv2036-LAB-DEB

action;" 3) the officers had reasonable suspicion for a stop, had probable cause for an arrest, and used reasonable force; and 4) the FAC doesn't allege any facts suggesting racial animus. (Dkt. 10-1 at 12–13). The Court has already considered the latter two arguments. The former two, though, aren't enough to dismiss the remaining state law claims against the City.

First, the City cites no authority for its suggestion that Shine can't hold it liable "for an intentional tort" at all without alleging "facts by which [it] can be found *directly* liable" for that tort, so it's unclear what law it intends to invoke. (*Id.* at 12 (emphasis added)). But assuming that the City means to argue that it can't be vicariously liable through *respondeat superior* for intentional torts, it's mistaken. "[A]n employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of *respondeat superior*, even though the employer has not authorized the employee to commit crimes or intentional torts." *Lisa M. v. Henry Mayo Newhall Memorial Hosp.*, 12 Cal. 4th 291, 296–97 (1995). And this rule applies equally to public and private employers. *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991). That the FAC doesn't allege facts by which the City can be held directly liable for its employees' alleged intentional torts, then, isn't enough to establish that the City can't be held liable on those claims.

Second, the state law claims aren't redundant. They may be based on similar or even identical facts as the § 1983 claim, but they rely on different theories and legal authority and are subject to different defenses. For example, *Monell*'s rule that a municipality can't be held liable "*solely* because it employs a tortfeasor" doesn't apply to state law tort claims in California. *See* Cal. Gov't Code § 815.2(a); *Eng v. Pacific Clinics*, Case No. 2:12-cv-10892-SVW-PJW, 2013 WL 12129611, at *6 (C.D. Cal. May 17, 2013) ("California has not adopted the *Monell* rule and holds government entities liable for the torts of their employees.").

The state law claims against the City are viable on a *respondeat superior*

theory and they aren't redundant of the legally distinct § 1983 claim, so the state law claims can't be dismissed on either of these grounds.

## XIII.   Defendants Don't Identify "Redundant, Immaterial, Impertinent, or Scandalous Matter" to Strike

The City and the Individual Defendants each move to strike portions of the FAC on the ground that those portions are "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Motions to strike "are viewed with disfavor and are infrequently granted." 5C C. Wright & A Miller, Fed. Prac. & Proc. Civ. Civ. ("Wright & Miller") § 1380 (3d ed.). They are "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint," *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977), and courts typically don't strike portions of the complaint "unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to [a party]." Wright & Miller § 1382.

Defendants argue that all the state law claims should be struck to the extent they aren't dismissed because they are "redundant" with Shine's § 1983 claims (Dkt. 11-1 at 23; Dkt. 10-1 at 12–13). As discussed above, though, these claims are legally distinct and therefore not redundant. *See supra*, Section XII. Nor must the state law claims be stricken on the ground that they aren't supported by sufficient factual allegations—that would be a basis to dismiss the claims, not strike them, and the Court has already considered whether dismissal is proper under the Rule 12(b)(6) standard.

The Court won't strike the FAC's prayer for punitive damages, either. The Individual Defendants argue that "all the claims [supporting this prayer] should be dismissed," and that the FAC "fails to allege facts [from which] to infer that the officers' conduct was malicious, reckless, oppressive, or fraudulent, as required [for punitive damages]." (Dkt. 11-1 at 23). But the Ninth Circuit has refused to permit district courts to strike prayers for damages because "us[ing] Rule 12(f) as

a means to dismiss some or all of a pleading . . . would . . . creat[e] redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion  . . . already serves such a purpose." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). Even had the Individual Defendants used the right procedural vehicle, they'd be wrong on substance: making all reasonable inferences in Shine's favor, the FAC's allegations of Shine's lack of resistance, the absence of a suspected violent crime, and use of force sufficient to cause Shine to pass out support an inference that Fuston and Johnston acted with "reckless or callous indifference" to Shine's rights. (Dkt. 6 ¶¶ 16–19); *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The Defendants also ask the Court to strike eighteen paragraphs and portions of nine more paragraphs from the complaint, arguing that the allegations are "irrelevant," "not factually supported within the FAC," "conclusory," "speculative," or "simply do not make sense." (Dkt. 10-1 at 13–14; Dkt. 11-1 at 24–25). Some of these allegations may be speculative or have doubtful relevance to Shine's claims, but none "have no possible logical connection to the subject matter of the controversy," and none appear likely to "cause significant prejudice" to the Defendants. Wright & Miller § 1382. "Conclusory" allegations are generally permissible, even if insufficient to state a claim without more. The allegations Defendants describe as "not factually supported within the FAC" appear to be either legal conclusions or factual allegations made upon information and belief— again, these are frequently part of a pleading and they aren't the sort of prejudicial or abusive allegations that are subject to being stricken. And although several paragraphs are grammatically confusing sentences, they nevertheless "make sense."  The motions to strike are **DENIED**.

/ / /

/ / /

/ / /

**CONCLUSION**

The Motions to Dismiss are:

1) **GRANTED IN PART** as to the § 1983 claim insofar as that claim is premised upon malicious prosecution, and **GRANTED IN PART** as to the unreasonable force theory against Korenkov. It is **DENIED IN PART** as to the unlawful seizure theory against all Defendant Officers and the unreasonable force theory against Fuston and Johnston;

2) **GRANTED** as to the § 1983 claim against the City. That claim is **DISMISSED WITHOUT PREJUDICE**;

3) **GRANTED** as to Shine's Ralph Act claim. That claim is **DISMISSED WITHOUT PREJUDICE**;

4) **DENIED WITHOUT PREJUDUCE** as to the FAC's Bane Act claim;

5) **DENIED IN PART** as to the FAC's assault claim against Fuston, Johnston, and the City, but **GRANTED IN PART** as to that claim against Korenkov;

6) **DENIED IN PART** as to the FAC's battery claim against Fuston, Johnston, and the City, but **GRANTED IN PART** as to that claim against Korenkov;

7) **DENIED** as to the claim for false imprisonment;

8) **GRANTED** as to the claim for malicious prosecution. That claim is **DISMISSED WITH PREJUDICE**;

9) **GRANTED** as to the claim for intentional infliction of emotional distress. That claim is **DISMISSED WITHOUT PREJUDICE**;

10) **DENIED** as to the claim for negligence; and

11) **DENIED** as the requests to strike portions of the FAC.

Shine may seek leave to amend his complaint on or before **October 18,**

/ / /

/ / /

20cv2036-LAB-DEB

**2021**. If he declines to do so, Defendants may move to dismiss the FAC's Bane Act claim on or before **November 1, 2021**.

   **IT IS SO ORDERED**.

Dated: September 29, 2021

**Hon. Larry Alan Burns**
United States District Judge

20cv2036-LAB-DEB